UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ONEBEACON INSURANCE COMPANY as assignee of GAGE FARMS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 1:10CV8 SNLJ ) |
| DEERE & COMPANY d/b/a JOHN DEERE, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, filed November 1, 2010 (#20). Responsive pleadings have been filed, and this matter is now ripe for disposition.

I.   Case Summary

The following facts are undisputed.[1] Plaintiff OneBeacon Insurance Company ("OneBeacon") filed its complaint on behalf of its insured, Gage Farms (a partnership consisting of Jeff and Donald Gage), against defendant Deere & Company d/b/a John Deere ("John Deere"). On September 25, 2008, Donald Gage was operating a combine manufactured by the defendant. The combine suddenly caught on fire and was completely destroyed. The attached cornhead was also damaged, but it had a salvage value of $10,000. The combine (with its cornhead) was the

---

[1] Plaintiff did not respond to defendant's Statement of Uncontroverted material Facts. Thus, pursuant to Local Rule 7-4.01(E) of the United States District Court for the Eastern District of Missouri, the Court will deem those facts as admitted for the purposes of summary judgment. Plaintiff contends that there are disputed issues of material fact but does not set them out in a statement of its own, as required by the Local Rules.

only thing to sustain significant damage. Notably, the combine and cornhead operate as an integrated harvesting unit. Without a John Deere cornhead attached to the combine, the John Deere combine cannot harvest corn. Gage Farms paid $198,000 to French Implement Company for the combine on March 20, 2008. Gage Farms separately purchased the cornhead from French Implement Company for $37,000 on July 28, 2008. Because Gage Farms had purchased the combine and cornhead second-hand from French Implement Company, there was no warranty furnished by John Deere.

As a result of the fire, Gage Farms made a property insurance claim with its insurer, OneBeacon. OneBeacon paid $235,000 to Gage Farms for the loss of the combine and cornhead (including the $10,000 salvage value of the cornhead). Gage Farms subsequently assigned its rights to OneBeacon, and OneBeacon thus claims it is subrogated to the rights of Gage Farms to bring this action against parties it believes should be held responsible. On January 6, 2010, OneBeacon filed its complaint against defendant John Deere for negligence (Count I) and strict liability (Count II). Defendant seeks summary judgment on both counts.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule Civil Procedure 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

### III.  Discussion

Defendant's motion hinges on the application of the economic loss doctrine to plaintiff's claims. Missouri's economic loss doctrine bars recovery under strict liability or negligence theories if "the only damage is to the product sold." *See, e.g.*, *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 902 (Mo. 1986) (*en banc*); *Clevenger & Wright Co. v. A. O. Smith Harvestore Prod. Inc.*, 625 S.W.3d 906, 909 (Mo. Ct. App. 1981). The remedy

available in such cases is limited to contract or warranty claims. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-72 (1986). In this case, the plaintiff pursues tort theories to the exclusion of any contract or warranty theories, apparently because the manufacturer's warranty for the combine here had expired.

Defendant seeks summary judgment on plaintiffs' tort claims because defendant argues they are precluded by the economic loss doctrine. Plaintiff states that the economic loss doctrine should not apply here for two reasons: (1) there was no privity between Gage Farm and John Deere; and (2) the combine's failure caused damage to the cornhead, which should be considered "other property."

### A. Privity and the Application of the Economic Loss Doctrine

Plaintiff claims that there was no equal bargaining power nor privity between Gage Farm and John Deere, and that, as a result, the economic loss doctrine does not apply. Plaintiff cites to no authority to support this argument. Rather, plaintiff constructs this argument from the concurring opinion in *Sharp Bros. Contracting Co.*, 703 S.W.2d at 903, which stated "[t]he rationale for [the economic loss] doctrine was that consumers and remote parties are not on an equal footing with the manufacturer or seller to bargain effectively for the allocation of risk." However, as the Supreme Court observed in *East River S.S. Corp.*, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." 476 U.S. at 871. Indeed, "[i]f the buyer does not obtain a warranty, he will likely receive a lower price in return. Given the availability of warranties, the courts should not ask tort law to perform a job that contract law might perform better." *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 880 (1997) (citing *East River S.S. Corp.*, 475

U.S. at 872-73). Although plaintiff attempts to make a case based on its "inability" to contract directly with John Deere, plaintiff in fact *chose* not to contract directly with John Deere. Rather than negotiate with John Deere directly (as it might have done, being a commercial farming operation), Gage Farm chose to purchase a previously-owned combine and pay a lower price. Jeff Gage testified at his deposition that Gage Farm knew it was forfeiting any warranty from John Deere as a result, and Gage Farm failed to obtain a warranty from French Implements. Plaintiff's reasoning — that the economic loss doctrine should not apply to secondhand purchasers because they cannot negotiate with the manufacturer — would apparently give secondhand purchasers a better warranty and more remedies than the party who originally purchased the equipment new. That cannot be the law.

**B.     The Economic Loss Doctrine's Product/Other Property Distinction**

Next, plaintiff argues that the doctrine does not apply here because the "product" did not merely damage itself — it also, says plaintiff, injured the cornhead.

A brief description of how a combine and a "header" (such as a cornhead) relate is helpful. Because the parties did not provide a general description, the Court will borrow another district court's explanation:

> As the name implies, a "combine" is a farm implement that combines several different functions in harvesting crops into one machine, including reaping (cutting or gathering the crop), threshing (separating the grain from the plants), and cleaning the grain. The "header" is the intake mechanism that gathers the crop and feeds it into the combine. The header may also perform other functions, depending upon the type of combine and header, including, for example, cutting the crop. Also, different crops may require different headers.

*Albers v. Deere & Co.*, 599 F. Supp. 2d 1142, 1144-45 (D.N.D. 2008). In this case, it is undisputed that a John Deere combine cannot harvest corn without a John Deere cornhead attached. A John Deere combine is not compatible with any other brand of cornhead.

Defendant John Deere contends that the combine and cornhead should be treated as the same "product" for purposes of applying the economic loss doctrine despite the fact that the combine and cornhead were purchased separately, in different transactions and in different months. John Deere specifically argues that because a John Deere cornhead can only be used in connection with a John Deere combine, the cornhead cannot be considered "other property." In particular, John Deere encourages the Court to adopt the reasoning of the District Court for the District of North Dakota in *Albers*, 599 F. Supp. 2d 142, which provided lengthy analysis for a situation nearly identical to this case. In *Albers*, the plaintiff had purchased a secondhand combine and cornhead, and the combine later caught on fire and destroyed the cornhead. *Id*. at 1144. There, the combine and cornhead were purchased on the same day, but the two items were listed separately on the purchase order and reflected two separately-negotiated prices. No warranties were provided as part of the sale pursuant to John Deere's usual practice of not providing a warranty for used equipment. *Id.*

The *Albers* court recognized that the North Dakota Supreme Court had "yet to give specific guidance regarding the extent to which tort recovery is permitted for damage to property other than the defective product itself, or what is generally referred to as 'other property.'" *Id.* at 1145. Moreover, the North Dakota Supreme Court had not explicitly adopted the "expansive approach" that had been developed by the Eighth Circuit in *Dakota Gasification Co. v. Pasco Building Systems*, 91 F.3d 1094 (8th Cir. 1996), in response to North Dakota's dearth of law on

the subject.  *See Albers*, 599 F. Supp. 2d at 1145.

The Eighth Circuit adopted a "foreseeability" test, predicting "that the North Dakota Supreme Court would adopt the modern trend, and conclude that the economic loss doctrine extends to preclude liability in tort for physical damage to other nearby property of commercial purchasers who could foresee such risks at the time of purchase." *Dakota Gasification*, 91 F.3d at 1101 (*quoted by Albers*, 599 F. Supp. 2d at 1150-51).  Because subsequent North Dakota Supreme Court cases had not proven the Eighth Circuit's prediction to be "clearly wrong," however, the *Albers* court applied the foreseeability approach to conclude that the damage to the cornhead in that case was "clearly foreseeable in the event of a loss such as occurred in this case and something that could have been addressed at the time of the combine's purchase." *Albers*, 599 F. Supp. 2d at 1152.  The court also considered the application of the "product/other product" dichotomy, which focuses on defining the "product" rather than upon the foreseeability of the damage.   In doing so, the court considered three approaches that courts have taken to define the "product."

- Under the "object-of-the-bargain" approach, "if a component part causes damages to the product bargained for, then, in most jurisdictions, the remaining parts of the purchased product would not be considered 'other property.'  On the other hand, items purchased and bargained for separately from the 'product' would more likely be considered 'other property.'" *Id.* at 1155.  The *Albers* court acknowledged that the fact that the combine and header were identified as separate products on the purchase order may create a fact issue for the jury under this approach.  *Id.* at 1158.
- Under a more relaxed standard, other courts "permit tort recovery for damage caused by component parts to other parts of an integrated product in some cases." *Id.*
- And still other courts deny tort recovery where the "components or other property became part of an integrated product, regardless of what was the 'object-of-the-bargain.'" *Id.* at 1160.

The court concluded that it must look at what the plaintiff had purchased from the third-party seller, and it determined that while "a purchaser's negotiation of a separate price might be a material issue of fact in other circumstances," it was not in that case because: (1) the combine required some sort of header to be functional; (2) the header and combine were sold at the same time (albeit with separate pricing); and (3) the header was modified to fit the combine. *Id.* at 1161. The court determined that the "only reasonable conclusion...is that the 'object-of-the-bargain' was a functioning combine and that the header was intended to be part of the bargained-for product, even if it was not to be used all of the time." *Id.*

Missouri courts have similarly provided little guidance on this particular issue. The *Sharp* case, for example, is of limited assistance because only the product itself was destroyed in that case. 703 S.W.2d at 902. The Missouri Supreme Court stated simply that it found Prosser & Keeton on the Law of Torts, § 81(3) (5th Ed. 1984), persuasive, and that it would "deny recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold." 703 S.W2d at 903. Plaintiff reads *Sharp* narrowly, as indicating that the Missouri Supreme Court would therefore not preclude tort recovery for damages to anything but the literal product sold.

The Eighth Circuit addressed the product/other property distinction (or lack thereof) under Missouri law in *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995).[2] There, the plaintiff purchased a computer system (the product) and argued that the

---

[2] The Court notes that *Rockport* cites *Crowder v. Vandendeale*, 564 S.W.2d 879, 881-2 (1978) (en banc) for the proposition that the economic loss doctrine does not apply where the product was "rendered useless by some violent occurrence." 53 F.3d at 198. The *Rockport*

economic loss doctrine did not apply because there was damage to other property — that is, there was a loss of data installed on the computer system. 53 F.3d at 198. The Eighth Circuit concluded that "such losses represent nothing more than commercial loss for inadequate value and consequent loss of profits." *Id.* A computer system is essentially worthless without data, just as a combine cannot operate meaningfully without some kind of header. Similarly, data is something that parties might reasonably foresee would be damaged in case of product failure. And, as in this case, the data was installed after the computer system itself — but, using a version of the "integrated product" test, the Court found it still did not constitute other property. The Eighth Circuit, then, does not interpret *Sharp* in the narrow sense that plaintiff advocates here.

Plaintiff argues that adopting the "integrated" product approach would be an impermissible expansion of the economic loss doctrine in Missouri. Plaintiff distinguishes the *Albers* case factually and notes that Missouri has not adopted the "object of the bargain" approach. Although it is easy to distinguish the facts of *Albers* from those here — namely, that the header and combine were purchased on separate days here, and the header was (apparently) not modified to fit the combine in this case — considering the integrated product discussion adopted by the Eighth Circuit in *Rockport*, this Court believes that the result should be the same notwithstanding plaintiff's narrow reading of the *Sharp* Court's "product sold" language. Plaintiff essentially advocates a form-over-substance approach in relying on the date of purchase for a header which would have been useless without the John Deere combine. Under any of the mainstream tests (foreseeability, object of the bargain, integrated product), the header is not

---

Court does not seem to acknowledge that the Missouri Supreme Court held in *Sharp* that the violent occurrence language "should be no longer followed." 703 S.W.2d at 903.

"other property" when attached to an operating combine.

      C.      **Application of the Economic Loss Doctrine Where There Is Damages to Other Property**

Finally, plaintiff argues that if it can establish that there was damage to "other property," then the economic loss rule does not apply even to seeking tort-based damages for loss of the product itself. Plaintiff relies on two asbestos-related cases, *Clayton Center Associates v. W.R. Grace & Co.*, 861 S.W.2d 686 (Mo. Ct. App. 1993) and *School District of the City of Independence, Missouri No. 30 v. Gypsum Co.*, 750 S.W.2d 442 (Mo. Ct. App. 1988), arguing that the plaintiffs in those cases were permitted to seek damages for replacing the product as well as for the damage to the buildings in which the product was installed. Those cases are inapposite here because the asbestos itself did not fail or cause damage to itself, and it did not require replacement or repair in order to function as intended (as insulation or fire-proofing product). Asbestos cases present a special set of circumstances, and there is no reason to believe that the Missouri Supreme Court would depart from the general rule that the economic loss doctrine precludes recovery for the product itself even where the product damages other property. *See Saratoga Fishing Co. v. Martinac & Co.*, 520 U.S. 875, 884 (1997); *Albers*, 599 F. Supp. 2d at 1164. Thus, even if plaintiff were correct regarding its reading of Missouri's economic loss doctrine, it would be limited to damages for injury to the header only.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment, filed November 1, 2010 (#20) is **GRANTED** as to all of plaintiff's claims against defendant.

**IT IS FURTHER ORDERED** that judgment is hereby entered in favor of the defendant.

Dated this   11th   day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE